# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

DAVID HUBER AND
DEBRA HUBER,

    Plaintiffs,

v.                           Case No.: 2:24-cv-01093-KCD-NPM

AMWINS ACCESS INSURANCE
SERVICES, LLC,

    Defendant.

_____/

## PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs, DAVID HUBER AND DEBRA HUBER ("Plaintiffs", "Insureds", or "the Hubers"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure (FRCP) 56 and Local Rule 3.01, respectfully submit their Response and Opposition to Defendant AMWINS ACCESS INSURANCE SERVICES, LLC's ("Defendant" or "AMWINS") Motion for Summary Judgment (Doc. 31).

## INTRODUCTION

The Plaintiffs relied upon AMWINS as a wholesale broker with specialized excess market access to obtain excess replacement excess flood coverage when their homeowner's carrier non-renewed their original excess flood policy. The Plaintiffs and their retail insurance agent provided AMWINS with the necessary documents and

information required by the excess carrier and as directed by AMWINS; and followed AMWINS' instructions for the order to bind coverage. The Plaintiffs and their retail insurance agent submitted the order to bind to AMWINS approximately one week before the policy was due to lapse, and with more than sufficient time to submit the order to bind coverage to the excess carrier.[1]

AMWINS unreasonably delayed submission of the Plaintiffs order to bind, in derogation of its most basic duties as an agent and/or broker, while requesting information and documents already in its possession; and failed to timely and properly review documents previously submitted by the Plaintiffs and their retail insurance agent in accordance with AMWINS' own instructions.[2] Due to the delay by AMWINS in submitting the Plaintiffs' order to bind coverage, by the time the order to bind was submitted to the excess carrier, the order was rejected by the managing general agent ("MGA") for the carrier. As a direct result of AMWINS' negligence,[3] there was no excess flood coverage in place at the time of Hurricane Ian, resulting in substantial flood damages to the Plaintiffs' residence that were not covered by the primary flood policy.

Defendant's Motion for Summary Judgment asserts that Florida choice of law principles dictate that Maryland law applies to this action; however, the majority of

---

[1] See Ex. 1, Affidavit of Expert Peter Marchel [*in Opposition to Motion for Summary Judgment*], para. 10.
[2] See Ex. 1; [Composite] Ex. 2- Affidavit of Authenticity, CV of expert P. Marchel, Report of expert P. Marchel and Supplemental Report of Expert Peter Marchel.
[3] Ex. 1, paras 14-15, 24; Ex. 2 Report of Expert Peter Marchel, pp. 4-5;

factors weigh in favor of application of Florida law, including the residence of the parties, the location of the property at issue, and the location where the injury in fact occurred.

Defendant's Motion also seeks summary judgment on issues of negligence and breach of fiduciary duty, both of which raise various fact-intensive inquiries regarding the communications and relationships between parties essential to the fundamental issues of the case, and which should not be resolved on a motion for summary judgment. Accordingly, the Plaintiffs respectfully request that the Defendant's Motion for Summary Judgment be denied as to both counts.

## STATEMENT OF UNDISPUTED FACTS

1.    Pending before this Court is Plaintiffs' Amended Complaint against Defendant for Negligence and Breach of Fiduciary Duty (the "Complaint") (Doc. 22).

2.    This action was filed by Plaintiffs against wholesale broker, AMWINS, alleging failure by AMWINS to timely and properly submit a request to bind excess coverage for excess flood coverage to the carrier, as a result of which there was no coverage in place when Hurricane Ian caused damage to the Plaintiffs' property located at 4388 Gordon Drive, Naples, Florida 34102 ("the Subject Property")(Plaintiffs' Complaint, Doc. 22).

3.    During all relevant time periods in this action the Plaintiffs were Florida residents; having Florida driver's licenses, Florida voter registrations, Florida vehicle

registrations and titles.[4]

4.    The Plaintiffs own multiple residences, in Florida, Idaho, Maryland and the Bahamas.[5]

5.    On August 9, 2022, approximately 6 weeks prior to the policy renewal period for the excess flood policy for the Subject Property (September 27, 2022), Plaintiffs' excess flood coverage had been non-renewed by their former excess carrier and long-term primary homeowners carrier, Privilege Underwriters Reciprocal Exchange ("PURE").[6]

6.    On August 10, 2022, the Plaintiffs and their retail insurance agent, Willis Personal Lines, LLC ("Willis") initially approached AMWINS to obtain quotes for available replacement excess flood coverage, to take effect September 27, 2022.[7] These quotes were not ultimately used by either party.

7.    On August 30, 2022, the Plaintiffs and Willis approached AMWINS to obtain new quotes for available replacement excess flood coverage.[8]

8.    On August 31, 2022, AMWINS obtained quotes for excess coverage in the amounts requested by the Plaintiffs and provided them to the Plaintiffs and their retail insurance agent.[9]

---

[4] See Exhibit 3 (Ex 4 to Defendant's Motion for Summary Judgment) Deposition Transcript for David Huber; Ex 21 to Deposition- copy of Florida driver's license; p. 12 Line12- p.13, Line 20.
[5] See Ex 3, p.9 Line 14- p.10, Line 10.
[6] Ex. 4, PURE August 9, 2022 Notice of Condition Renewal/Nonrenewal
[7] Ex. 5, 8/10/2022 correspondence between Willis and Halstead.
[8] Ex. 6, Deposition transcript of Ashlyn Halstead (10/22/2025) and exhibits, Depo. Ex. 5 (p.2-3).
[9] Ex. 6, Deposition transcript of Ashlyn Halstead (10/22/2025) and exhibits, Depo. Ex. 5 (p.2).

9.    The quotes from the excess flood carrier and Managing General Agent, TM Highland, required only two documents from the Plaintiffs in order to submit the order to bind: a) the TM Highland policy application (issued by WNC First Insurance Services, Miami, Florida); and b) the surplus lines affidavit (diligent effort form).[10]

10.    On September 21, 2022 at 7:15 a.m., the Plaintiffs' retail insurance agent, Willis, sent the order to bind to AMWINS employee Ashlyn Halstead, attaching the diligent effort form and a copy of the policy application signed by the retail insurance agent only. In that email, the Willis agent indicated that they knew they needed the application signed by the Plaintiffs, but asked Halstead: "[b]efore I go back to him [Plaintiff David Huber] for the signature on the application, is there anything else that is need [sic] in order to have this coverage issued/bound?"[11] AMWINS employee Ashlyn Halstead replied on September 21, 2022 at 7:46 a.m.: "[t]hat's it…but we do need a copy of his primary flood dec….the one we have on file expired on 8/12/22. Once you have everything just send it all back to me and be sure to include the quote he wants."[12]

11.    On September 21, 2022 at 3:49 p.m., the Plaintiffs' retail insurance agent submitted the order to bind to AMWINS with: a) the signed application, b) the primary flood declaration and c) a copy of the requested quotes, as instructed by AMWINS.[13]

---

[10] Ex. 7, TM Highland Quotes, dated 8/30/2025.
[11] Ex. 6, Depo Ex. 5 (p.2)
[12] Ex. 6, Depo Ex. 5 (p.2)
[13] Ex. 6, Depo Ex. 5 (p.1)

12.    The only other document necessary for AMWINS to submit the request to bind to TM Highland was the executed diligent effort form, which AMWINS had received that morning and which was in AMWINS' file.[14]

13.    In response, AMWINS sent email correspondence to Willis on September 21, 2022 at 3:51 p.m. confirming receipt of the request to bind coverage and advising that AMWINS "have started the insurance process."[15] This response was written by AMWINS employee Ashlyn Halstead and was not an automatic response to Willlis' email of September 21, 2022 at 3:49 p.m.[16]

14.    The confirmation email states that some markets and carriers take longer to bind coverage; however, the confirmation email does not say anything about delays in AMWINS' submissions of the requests to bind.[17]

15.    As of the September 21, 2022 confirmation email from AMWINS, there was no indication from AMWINS that any required information or documents were missing at that time.

16.    There was no correspondence or communication with the retail insurance agent advising that AMWINS required all of the requisite supporting documents, including documents sent to AWMINS by Willis that morning, needed to

---

[14] Ex, 6, p.18, Line 1-p.18, Line 20; p. 29, Line 18-p.30, Line 3; Ex. 8, Deposition of Aimee Ticer (10/22/2025), p. 33, Line 2-p.33, Line13; Ex. 9, Deposition of B. Riley (06/24/2025), p. 97, Lines 11-17
[15] Ex. 6, Depo Ex. 6 (p.1)
[16] Ex. 9, p. 88 Line 2- p. 88 Line 23.
[17] Ex. 6, Depo Ex. 6 (p.1)

be submitted as attachments to one singular email, which is not a standard request.[18]

17.    The following date, September 22, 2022 at 2:03 p.m., nearly 24 hours later, AMWINS employee Aimee Ticer ("Ticer") contacted Willis to advise that the diligent effort form was missing.[19]

18.    Willis responded five minutes later, advising that the form had already been provided with the original materials sent on September 21, 2022 at 7:15 a.m., and again attached a copy, as requested.[20]

19.    The following day, on Friday September 23, 2022, at approximately 11:01 a.m.[21], and almost two days after receipt of the order to bind from the Plaintiffs and their retail insurance agent, Ms. Ticer submitted the request to bind to TM Highland.[22]

20.    On September 23, 2022 at 2:10 p.m. (11:10 a.m.)[23] representative Arnie Mello ("Mello") of TM Highland advised that they could not bind excess flood coverage because a moratorium had just been put in place in Florida.[24]

21.    On September 23, 2022 at 11:12 a.m., Ticer asked Arnie Mello, **"[e]ven though we got the request on Wednesday?** Just to double check so I can note the

---

[18] Ex. 6, p.27 Line 6-p. 27,Line 13; Ex. 8, p.73 Line19-p.73,Line 25; Ex. 1, paras. 11-12.
[19] Ex. 8, Depo Ex 6 (p.7).
[20] Ex. 8, Depo Ex 6 (p.6).
[21] There has been a discrepancy in documents regarding time signatures for the emails between AMWINS and TM Highland on September 23, 2022, which have not yet been resolved. However, Plaintiffs will assume for the purposes of the Defendant's Motion that the earlier time is alleged.
[22] Ex. 8, Depo Ex 7 (pp.9-10).
[23] Additional time signature discrepancy
[24] Ex. 8, Depo Ex 7 (p.9).

file."[25]

22.    On September 23, 2022 at 2:13 p.m. (11:12 a.m.)[26], Mello stated that "it is based on when we receive the request."[27]

23.    On September 23, 2022 at 11:25 a.m., AMWINS Executive Vice President Brendon Riley ("Riley") emailed Mello, requesting an exception and advising that the submission of the request to bind had been due to an employee "unexpectedly out of the office" and that it was an "out of the ordinary situation."[28]

24.    Riley also advised that Willis had sent the necessary information to AMWINS two days' prior to submission and "**it was just out[sic] mix up by missing the original request**."[29]

25.    On Monday September 26, 2022, TM Highland advised that the request for an exception was denied.[30]

26.    Riley then emailed Thomas Phillips, Vice President of the Private Flood Division of TM Highland and said that "we received a bind request on 9/21 to be effective on 9/26. Due to having a team member out of the office, unexpectedly, we were unable to get the bind order to you until Friday."[31]

27.    Riley also stated that **"[t]he insured and agent submitted the request in**

[25] Ex. 8, Depo Ex 7 (p.8)(Emphasis added).
[26] Additional time discrepancy
[27] Ex. 8, Depo Ex 7 (p.8).
[28] Ex. 8, Depo Ex 7 (p.7).
[29] Ex. 8, Depo Ex 7 (p.6)(Emphasis added).
[30] Ex. 8, Depo Ex 7 (p.4).
[31] Ex. 8, Depo Ex 7 (pp.3-4).

time and I don't think they should be punished for us not getting the request to you all quickly enough."[32]

28.     Thomas Phillips of TM Highland responded that: "[t]he moratorium was issued effective 9/23/2022. I don't have a way of making our reinsurers accept this when the order was not in. **Had we received it on Wednesday or Thursday then there would not have been a issue at all**."[33]

29.     Hurricane Ian made landfall on September 28, 2022, resulting in storm surge and flood damage to the Subject Property.[34]

30.     The primary flood carrier, Selective Insurance Company of the Southeast, paid the policy limits of $250,000 (Dwelling) and $100,000 (contents)[35]; however, significant additional damages remained for which no excess coverage was available.

31.     The Plaintiffs retained professional contractors to prepare estimates for the repair of damages for the flood damages versus the damages from a separate HVAC unit leak, copies of which have been provided to Defendant in discovery.

32.     After application of the primary flood policy limits, the Plaintiffs assert additional estimated damages of approximately $616,840.40 in repairs resulting from

---

[32] Ex. 8, Depo Ex 7 (p.3)(Emphasis added).
[33] Ex. 8, Depo Ex 7 (p.3)(Emphasis added).
[34] Ex. 10, Probable Cost Estimate (Flood), The Aerial Companies.
[35] Ex. 6, Depo Ex. 5 (p.6); Ex. 3, Depo Ex. 15 (pp.1-2).

flood damage, based on the flood estimate.[36]

33.    Due to the fact that no excess flood policy was bound, no coverage was available for the flood damages in excess of the primary flood policy's limits, resulting in losses to the Plaintiffs for repairs for the excess damages.

## LEGAL ARGUMENT

### A. *Standard for Summary Judgment*

A moving party is entitled to summary judgment "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F. R. Civ. P. 56(c). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of any genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue for trial, the court is obligated to construe the evidence in the light most favorable to the non-moving party. *Kinsale Ins. Co. v. Pride of St. Lucie Lodge 1189, Inc.*, 135 F.4th 961, 968 (11th Cir. 2025); *citing Mize v. Jefferson City Bd of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Further, "[i]t is not the court's role to weigh conflicting evidence or to make

---

[36] Ex. 10.

credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize*, 93 F.3d at 724 (11th Cir. 1996); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2513 (1986)("[c]redibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge). A fact is material if it "affect[s] the outcome of the suit under the governing law," and is genuine "if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235 (11th Cir. 2008).

## B. *Choice of Law*

A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state. *Orellana v. Roblox Corporation*, 769 F.Supp.3d 1273 (M.D. Fla. 2025). The allegations against Defendant are for negligence and breach of duty as an agent; therefore, in evaluating claims sounding in tort, Florida law requires application of the "significant relationship" test to resolve choice of law issues. *Plath v. Malebranche*, 351 F.Supp.2d 1338 (M.D. Fla. 2005). The primary principles for consideration under this analysis, based on the Restatement Second) of Conflicts of Law §6 (1971) are: a) the needs of the interstate and international systems, b) the relevant policies of the forum, c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, d) the protection of justified expectations, e) the basic policies underlying the particular field of law, f) certainty, predictability and uniformity of result, and g) ease in the determination and application of the law

to be applied. *Bell v. Midema*, 516 F.Supp.3d 1340, 1343 (M.D. Fla. 2021). Specific factors for consideration in tort claims include "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Jeffers v. Kerzner International Hotels Limited*, 319 F.Supp.3d 1267 (S.D. Fla. 2018) *citing Michel v. NYP Holdings, Inc.,* 816 F3d 686,694 (11th Cir.2016).

In this matter, the conduct and communications between the parties and their representatives took place across several states. The Plaintiffs are, and were at the time of the loss, legal residents and citizens of Florida, with Florida driver's licenses, voting registration, vehicle title and tags, and insurance.[37] The property for which the excess flood policy at the heart of this litigation was sought is in Florida, and the results of the failure to obtain this coverage – the injury in fact- occurred in Florida as a result of the losses from Hurricane Ian. The Plaintiffs issued their request to bind coverage from Florida. In addition to their Florida residence, the Plaintiffs maintain two other homes in the US and one in the Bahamas, at which they spend time during the year, one of which is also located in Maryland.[38] Although the requested excess policy could been delivered to one of their business addresses in Maryland (or to the Plaintiffs via email in Florida), that is a factor in a *lex loci* analysis, which is not applicable here because a policy was never issued.

---

[37] Ex 3, p. 12, Line12- p.13, Line 20.
[38] Ex. 3, p. 12, Line12- p.13, Line 20; p.14, Lines 7-10.

The communications at issue for the policy primarily occurred between: a) the
Plaintiffs (Idaho, Florida and Maryland); b) Willis, the retail insurance agent for the
Plaintiffs (Maryland); c) AMWINS (North Carolina and West Virginia); MGA TM
Highland (Florida and California); and the Plaintiffs' personal general counsel, Tina
Gascoigne (Maryland). In its Motion, the Defendant argues that all relevant
communications at issue occurred between AMWINS and individuals located in
Maryland. However, this does not address any of the Florida connections under the
significant relationship test; and ignores the connections to North Carolina or other
states completely, which encompasses all of the communications from AMWINS or
even TM Highland.

Under the significant relationship test, including the domicile of the Plaintiffs
(Florida), location of the property and injury in fact (Florida), where the sought-after
policy would provide coverage (Florida) and communications, Florida law should
apply.    In support of its argument, the Defendant has also cited pre-suit
correspondence from counsel for the Plaintiffs discussing the applicability of Maryland
law, which was obviously prepared prior to conducting any discovery and is not
binding upon either the Court or the parties to this action.[39]

## C. The Claims: Negligence and Breach of Duty

### i. *Negligence*

The parties agree that Maryland and Florida have similar elements and

---

[39] Doc. 31 (Ex. 1. To Doc. 31).

standards for a cause of action for negligence: (1) existence of a duty by defendant to plaintiff; (2) breach of that duty; (3) causation; and (4) damages to the plaintiff. *Clay Elec Coop, Inc. v. Johnson*, 873 So.2d 1182 (Fla. 2003); *Troxel v. Iguana Cantina, LLC*, 201 Md.App.476 (Md. Ct. Spec. App. 2011). Under either Florida or Maryland law, all insurance agents and brokers owe a general duty to exercise reasonable care, skill and diligence in conducting their transactions. *Wachovia Ins. Services v. Toomey*, 994 So.2d 980 (Fla. 2008); (*CIGNA Property and Cas Companies v. Zeitler*, 730 A.2d 248, 260 (Md Ct. Spec. App 1999); *see also Tiara Condominium Ass'n v. Marsh, USA, Inc.*, 991 F.Supp.2d 1271 (S.D. Fla. 2014)(broker or agent where agent may owe additional duty where it holds itself out as having expertise in a given field of insurance sought by insured and insured relied upon expertise);.

In this case, AMWINS undertook a duty to a) obtain quotes for excess coverage on behalf and for the benefit of the Plaintiffs, and b) to submit any order to bind from them to the ultimate excess carrier via their MGA, TM Highland. AMWINS failed to meet even that preliminary level of care.[40] Despite receiving all documents necessary for submitting the request to bind[41], as well as an email specifically marked high priority[42], AMWINS failed to timely submit the order to bind, and in so doing failed to use the requisite reasonable care, skill or diligence. To evaluate AMWINS'

---

[40] Ex. 1, pp.2-4; Ex 2. Report of Expert P. Marchel, p.17, Report Ex. "C", Report Exhibit - Addendum "Surplus Lines Insurance Principles and Issues; Supp Report of Expert P. Marchel, pp 1-9. Ex. 11, Deposition transcript of expert P. Marchel (9/25/2025), e.g., pp. 27, Lines 11-25; p. 28; pp. 38, Lines 19-25; p 39, Lines 1-18; p.41, Lines18-25; p.42, Lines 1-12; p. 43, Lines 18-22; p. 64, lines 13-20.
[41] Ex. 9, p 97, Lines 11-17.
[42] Ex. 6, Depo Ex. 4 p.1

conduct, the Plaintiffs retained expert Peter M. Marchel, who reviewed the communications and transactions, and concluded that AMWINS had failed to use the reasonable care, skill, and diligence required for the transaction in accordance with common industry practices. [43] Specifically, Mr. Marchel opined that: a) the Plaintiffs submitted the order to bind with sufficient time for AMWINS to submit the order to the MGA; b) AMWINS had received all the necessary information from the Plaintiffs and their retail agent on September 21, 2022; c) AMWINS' acknowledgment email would be reasonably interpreted by the Plaintiffs and their retail agent to mean that AMWINS has submitted the order to the MGA; d) there was nothing indicating all documents had to be attached to one email nor is this an industry custom or standard; e) the delay in AMWINS' submission of the request to bind was not reasonable under industry standards and practices; e) AMWINS owed a duty to the Plaintiffs to properly handle the order to bind; f) AMWINS failed to meet that duty, but for which coverage probably would have been issued.[44] Conversely, AMWINS maintains that it conducted the process properly, and would not have handled it any differently.[45]

As a broker for specialized lines of excess coverage, AMWINS serves as the only link between the insured and their retail insurance agent on one hand, and the MGA and carrier.[46] As such, AMWINS is the only entity in the transaction who can

---

[43] Ex. 1; Ex. 2 Report of Expert Peter Marchel, pp. 4-5; 17; Supplemental and Rebuttal Expert Witness Report of Peter M. Marchel, p.9.
[44] Ex. 1; Ex. 2 Report of Expert Peter Marchel, pp. 4-5; 17; Supplemental and Rebuttal Expert Witness Report of Peter M. Marchel, p.9.
[45] Ex. 12, Deposition Transcript of Corporate Representative, p. 111, Lines 19-25, p.112, Lines 1-8, p. 113, Lines 1-24.
[46] Ex. 1, para. 20.

submit the Plaintiffs' order to bind coverage and controls that part of the process completely.[47]

Further, AMWINS actually admitted that it had mishandled the transaction in its communications with the MGA, TM Highland, stating that it was AMWINS' "mix-up", that the agent [Willis] and the insured had submitted the order to bind in time, and that AMWINS did not get the order to bind to the carrier quickly enough.[48]

Accordingly, AMWINS owed a duty of reasonable care in the submission of the order to bind that it undertook, but failed to adhere to basic industry practices, resulting in damages to the Plaintiffs.[49] At a minimum, the reasonableness of Defendant's conduct involves a fact-intensive inquiry for the trier of fact.

ii. *Breach of Fiduciary Duty*

The Defendant, asserting Maryland law, next argues in its Motion that AMWINS, as a wholesale broker obtaining excess coverage on behalf of the Plaintiffs, did not owe any form of duty to the Plaintiffs, fiduciary or otherwise. (Doc. 31, p.2). Defendant asserts that this was an arms-length transaction, on the basis that AMWINS had no direct communications with the Plaintiffs themselves. (Doc. 31, p.2).

Again, the parties do not disagree that Florida and Maryland have similar standard elements for a cause of action of fiduciary duty, which requires: 1) existence of a fiduciary relationship between the parties that creates a duty; (2) breach of that

---

[47] Ex. 1; Ex. 2 Report of Expert Peter Marchel, pp. 4-5; 17; Supplemental and Rebuttal Expert Witness Report of Peter M. Marchel.
[48] Ex. 8, Depo Ex 7 (p. 3-6).
[49] Ex. 1.

duty; (c) damages resulting from that breach. *Lesti v. Wells Fargo Bank, N.A.,* 960
F.Supp.2d 1311 (M.D. Fla. 2013); *Cf, Froelich v. Erickson*, 96. F. Supp.2d 507 (D.
Maryland 2000). However, the Defendant asserts that "AIMWINS did not undertake
to advise, represent or procure coverage for Plaintiffs," and acted strictly as a
middleman. (Doc. 31, p. 3). The cases cited by AMWINS concern the provision of
advice in negotiating contracts[50]; or advice regarding specific coverages[51]. The case
primarily relied upon, *Brown v. Ashcraft*[52], a factually distinct unpublished case under
Maryland law, involving parallel brokers and notice of cancellation of a policy.  In this
instance, however, the question is whether the wholesale broker was acting as agent
on behalf of the insureds with regard to the initial step of the actual submission of the
order to bind, which AMWINS had undertaken and undisputedly only AMWINS
could complete.

Generally, a broker is presumed to be "the agent of the insured" *Almerico v. RLI
Ins. Co.*, 716 So.2d 774, 776 (Fla. 1998);   *Essex Ins. Co. v. Zota*, 985 So.2d 1036 (Fla.
2008); *Riverside Apartments of Cocoa, LLC v. Landmark American Ins Co.*, 505 F.Supp.3d
1293 (M.D. Fla. 2020)(Applying Georgia law; wholesale broker for condominium
property insurance policy was found to be insured's agent were there were no "special
circumstances" demonstrating a closer relationship between the broker and the
insurer.) *See also, United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488 (4th Cir. 1998)(applying

---

[50] *White Const. Co, Inc. v. Martin Marietta Materials, Inc.*, 633 F.Supp. 2d 1302 (M.D. Fla. 2009)
[51] *Milazzo v. First Liberty Ins. Corp.*, 2021 WL  5843073 (M.D. Fla.  Dec. 9. 2021).
[52] [*No Westlaw citation available*]; Defendant's citation listed: U.S. Dist. LEXIS 145725 (D.Md. 2008).

Maryland law, whether wholesale broker acted as agent or subagent for insurer and insured's retail agent constituted fact issue which could not be resolved by summary judgment); *Landmark American Ins. Co. v. Moulton Properties, Inc.*, 440 Fed Appdx. 788 (11th Cir. 2011)(Applying Florida law, independent wholesale broker retained by insureds and their retail agent to obtain coverage acted as agent for insureds).

The "special relationship" test as articulated in *Riverside* regarding whether there are "indicia of agency" for the broker to act as agent of the <u>insurer</u> addresses factors such as: (1) the insurer characterizes the broker as its representative; (2) furnishes the broker with applications and sales brochures to solicit business on its behalf; (3) uses a broker as an agent for a single purpose; or (4) has a written agency appoint agreement expressly authorizing the broker to transact business on its behalf. *Riverside*, 505 F.Supp. at 1305.  Conversely, whether an insurance broker has a "special relationship" with an insured is question of fact for the jury.

Here, AMWINS does not assert that it is an agent for either the excess market or the MGA TM Highland.  In fact, AMWINS expressly stated that it does not have binding authority for that carrier or MGA. (Doc. 31, p. 3). As such, since AMWINS denies acting as an agent for the Plaintiffs, and does not claim to act as an agent for the insurer, AMWINS' argument appears to be that it owes no duty at all in this transaction.

Plaintiffs assert that AMWINS, having marketed its services as a specialty excess flood broker and having undertaken the quote and bidding process, where

AMWINS accepted the Plaintiffs' order to bind to submit to MGA TM Highland, AMWINS assumed at least the duty to complete the submission and handling of the order to bind coverage, and as such, owed a fiduciary duty to the Plaintiffs. *Essex Ins. Co. v. Zota*, 985 So.2d 1036 (Fla. 2008); *American Ins. Co. v. Moulton Properties, Inc.*, 440 Fed Appdx. 788 (11th Cir. 2011)[53]. Plaintiffs assert that AMWINS breached that duty, did not review the order to bind and supporting documents with the proper standard of care owed; and that AMWINS did not submit the order to bind to the MGA TM Highland with reasonable care and timeliness. As a cumulative result of AMWINS' breach of its duties, the order to bind was submitted to the MGA after a moratorium was effected, resulting in the Plaintiffs being unable to obtain excess flood coverage, for which they incurred losses during Hurricane Ian.

## Conclusion

Based on the foregoing, the Plaintiffs respectfully request the Court deny the Defendant's Motion.


Dated the ___ day of December, 2025.

**BOYLE, LEONARD & ANDERSON, P.A.**


*/s/Kendra F. Shaw*
Gregory L. Evans, Esq.
Florida Bar No. 0767824
Kendra F. Shaw, Esq.
Florida Bar No. 759031

---

[53] Ex. 1; Ex. 2.

Mark Boyle, Esq.
Florida Bar No. 005886
9111 W. College Pointe Drive
Fort Myers, FL 33919
Phone: 239.337.1303
Facsimile: 239.337.7674
eservice@insurance-counsel.com
gevans@insurance-counsel.com
mboyle@insurance-counsel.com
kshaw@insurance-counsel.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I CERTIFY that on December 19, 2025, this document was served via email to Matthew B. Criscuolo, Esquire, Cozen O'Connor, mcriscuolo@cozen.com, 1801 N. Military Trail, Suite 200 Boca Raton, Florida 33431.

*/s/ Kendra F. Shaw*
Kendra F. Shaw, Esquire