# PLAINTIFFS' EXHIBIT "1"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID HUBER AND
DEBRA HUBER,

    Plaintiffs,

v.

                                        Case No.: 2:24-cv-01093-JLB-NPM

AMWINS ACCESS INSURANCE
SERVICES, LLC,

    Defendant.
_____/

## AFFIDAVIT OF PETER MARCHEL

BEFORE ME, the undersigned authority, personally appeared Peter Marchel, JD, MBA, CDR, ARM, RPLU, CPCU, AIS, AIM, AIC, who being first duly sworn upon oath, deposes and says that:

    1.    My name is Peter Marchel. I am over the age of eighteen (18) and I am competent to testify as to all matters herein. This Affidavit is based upon my personal knowledge of the facts as stated herein or those facts as they appear in the documents produced for review in this matter including my review of the pertinent pleadings and documents produced in discovery for this matter.

    2.    I have been retained by the Plaintiffs in this matter, David Huber and Debra Huber ("the Hubers" or "the Plaintiffs"), as an expert for trial.

1

3. I have over 35 years of experience in the insurance industry, including experience as both a wholesale broker and retail broker of multiple insurance lines, including excess and surplus lines.

4. As part of my experience, I was in charge of training for brokers for one of the largest insurance brokerages in the world, Sedgwick Inc., as well as all litigation against our brokers in North America, Canada and related territories.

5. Additionally, I have held positions in claims advocacy and as a broker with one of the largest insurance wholesale brokers in the world, Crump Insurance Services, now known as CRC, as well as a wholesale specialty firm.

6. As part of my evaluation for this matter, I have reviewed documents and information obtained and submitted through the discovery process, including email correspondence, as well as deposition testimony and exhibits to depositions provided by individual employees of AMWINS Access Insurance Services, LLC ("AMWINS"), including employees Brendon Riley, Ashlyn Halstead and Aimee Ticer.

7. Based upon my professional experience and judgment, including my experience as a wholesale broker of excess and surplus lines insurance policies, as well as my review of the information produced and the deposition testimony, it is my assessment that AMWINS' handling of the Hubers' request to bind excess flood

coverage was not conducted in accordance with commonly accepted industry standards.

8. AMWINS in fact acknowledged its shortcomings in several emails exchanged with the managing general agent ("MGA") for the excess market, Tokio Marine Highland ("TM Highland"), as well as with the retail agent, Willis.

9. Based on the information provided, the prospective insureds, the Hubers, submitted a request to bind excess insurance coverage to their retail insurance agent, Willis Personal Lines, LLC ("Willis") who in turn submitted the request to bind to AMWINS on September 21, 2022. The original excess flood policy was not due to expire until September 27, 2022.

10. The request for the excess flood coverage submitted for the Plaintiffs to AWMINS, via the Plaintiffs' retail agent, was for coverage starting September 26, 2022. It is my professional opinion and assessment that the Hubers and their retail agent submitted their request to bind excess flood coverage to AMWINS with more than ample time for AMWINS to handle the request to bind.

11. AMWINS received all of the requisite information and documents for binding of the quote from the Hubers and their retail insurance agent, Willis, on September 21, 2022. After receipt of the order to bind, AMWINS issued its acknowledgement of the order to bind and advised that AMWINS had "started the issuance process."

12. There was nothing in the email correspondence from AMWINS that advised that all of the required documents from the Hubers or their retail insurance agent must be included as attachments to one email. There was no industry practice or standard requiring the Hubers or their retail insurance agent to submit all of the requested documents or information as attachments to one e-mail to AMWINS; nor am I aware of that as a business practice for any brokerage agency or firm.

13. AMWINS did not submit the request to bind to the MGA for the carrier, TM Highland, until September 23, 2022.

14. The delay by AMWINS in submitting the request to bind was not reasonable under commonly accepted industry standards and practices for similar insured or agent requests.

15. The available information and correspondence from the managing general agent ("MGA"), TM Highland, indicates that coverage would have been bound if the request had been timely and promptly submitted by AMWINS.

16. In addition, AMWINS held itself out as an experienced and specialized broker in obtaining excess flood coverage and advertised its expertise with regard to its access to specific excess flood markets, including Lloyd's.

17. AMWINS in fact represented that it had extensive experience with the placement of excess coverages in Florida; and was familiar with the moratorium for excess flood markets in the event of a potential storm.

18. AMWINS did not advise the Hubers and their retail insurance agent, Willis, of any specific instructions or cautions pertaining to that individual AMWINS office, such as their apparent necessity for having all documents attached to one email they could in turn forward to the MGA.

19. AMWINS also failed to notify the Hubers or their retail agent, Willis, that a moratorium could be effected at any time by the excess market due to hurricane or storm, which the Hubers and Willis, as new excess flood clients who had previously used their homeowner's carrier for excess, would not have been expected to know.

20. Once the order to bind was submitted to AMWINS, AMWINS was solely responsible for communications with the MGA TM Highland and the excess flood market, which could not be done by either the Hubers or Willis.

21. It is my assessment that AMWINS owed a duty to the Hubers to handle their request to bind the excess flood coverage, including forwarding it to the MGA TM Highland without delay.

22. AMWINS' acknowledgement of the order to bind on September 21, 2022 in confirmation of starting the issuance process would lead a reasonable insured or agent to assume that AMWINS had forwarded the order to bind to the MGA.

23. AMWINS failed to submit the order to bind until approximately two days after receipt of the order to bind from the Hubers and Willis; and it is my understanding that the moratorium by the excess flood market had already been enacted by that time.

24. Based on my experience AMWINS is solely responsible for the policy not being bound.

**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**

**FURTHER AFFIANT SAYETH NOT.**

_____
(Name)

STATE OF WASHINGTON

COUNTY OF King

This instrument was acknowledged before me this _16_ day of _December_ 2025, by _Peren Maechel_ who produced _WA DL_ as identification or is/are personally known by me and who did not take an oath.

_____
Signature of Notary Public

My commission expires (Seal)
08/16/2028

Notary Public
State of Washington
GEMMA R BELL
COMMISSION# 129232
MY COMMISSION EXPIRES
AUG. 16, 2028

Gemma R Bell
Printed Name of Notary Public

7